UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
HERMAN LEBOWITZ,

                             Plaintiff,

              -against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, JOHN O'MAHONEY, and
LAURA IZZO (individually, as aiders and abettors)

                         Defendant.
-----------------------------------------------------------------------X

Docket No.: 15-2890

**COMPLAINT**

Jury Trial Demanded

Plaintiff, HERMAN LEBOWTITZ, by and through his attorneys, WHITE, RICOTTA &

MARKS, P.C., complaining of Defendants herein, alleges, upon knowledge as to himself and his

own actions, and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1.     This is a civil action for compensatory and punitive damages, proximately resulting from

Defendants' violations of Plaintiff's rights pursuant to the Age Discrimination in Employment Act

of 1967 ("ADEA"), and under the laws of the State and City of New York, and any other cause of

action which can be inferred from the facts set forth herein.

2.     The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant

jurisdiction and the aforementioned statutory and constitutional provisions.

3.     Venue is proper pursuant to 28 U.S.C. § 1391.

4.     All conditions precedent to maintaining this action have been fulfilled.  A complaint of

discrimination was filed with the New York State Division of Human Rights which was cross filed

with the Equal Employment Opportunity Commission ("EEOC") on or about June 25, 2014. On

or about June 25, 2014, a Notice of Claim was filed. The statutory time period has passed and Defendants have not attempted to resolve this matter. A notice of right to sue letter was issued on February 19, 2015. This action was properly instituted within ninety (90) days of the receipt of said notice.

## PARTIES

5.      At all times hereinafter mentioned, Plaintiff Herman Lebowitz ("Herman") was and still is a resident of Kings County, New York.

6.      Defendant, New York City Department of Education ("DOE"), was and still is a New York City government entity, located at 52 Chambers Street, New York, NY 10007.

7.      Defendant, John O'Mahoney ("O'Mahoney"), is the principal at Sheepshead Bay High School ("Sheepshead Bay"), located at 3000 Avenue X, Brooklyn, New York 11235.

8.      Defendant, Laura Izzo ("Izzo"), is the assistant principal of special education at Sheepshead Bay.

## FACTS

9.      Herman is a fifty-seven (57) year old male, born on August 24, 1957.

10.     Herman began his employment with the DOE in September 1990 as a Mathematics Teacher. Herman has been employed as a Mathematics Teacher at Sheepshead Bay since September 2000.

11.     In or around December 2010, John O'Mahoney ("O'Mahoney") became the Principal of Sheepshead Bay, and as such, became Herman's supervisor.   Up to this point, Herman had

2

an exemplary record of performance within the DOE, receiving all satisfactory observations and yearly reviews, and was never the subject of any discipline.

12.    From the outset of his supervision of Herman, and continuing through present date, O'Mahoney has engaged in a pattern of discrimination, harassment, and retaliation against Herman due to his age.

13.    In or about May 2012, O'Mahoney attempted to terminate a number of teachers over the age of forty (40), including Herman, even though these teachers had satisfactory ratings up until this point.

14.    In or about June 2012, as a result of an age discrimination complaint filed by his union, Herman was reinstated to his position as a teacher.

15.    The following school year, in or around October 2013, the assistant principal of Special Education, Izzo, who, upon information and belief, may be related to O'Mahoney, conducted an observation of Herman's class.   Izzo, despite no background in math, gave Herman a poor evaluation without any basis in fact.   Similarly situated teachers who were under the age of forty (40) or who did not complain about discrimination, did not receive poor evaluations without a factual basis.

16.    In or around December 2013, Izzo went on maternity leave. Before leaving, Izzo stated that she would take care of the younger teachers. Moreover, all the young teachers had keys to Izzo's room which had a Xerox machine and other supplies. No senior teacher had access or keys to enter her room.

17.    On or about March 7, 2014, O'Mahoney observed Herman and gave him a poor evaluation, rating his performance as ineffective in a number of areas. However, during the time that

3

O'Mahoney observed Herman, Herman was not teaching a class, but was rather proctoring a test written by another teacher. As such, Herman was not able to teach or instruct the students in any way. As a result, Herman was evaluated poorly for following department orders exactly as directed.

18. On or about March 10, 2014, O'Mahoney inspected Herman's classroom and asked to view Herman's "word wall," which O'Mahoney criticized him for not having during his March 7 evaluation.   Herman showed him the wall, along with proof that the wall was up during the March 7 evaluation.   O'Mahoney further criticized Herman for having out of date student work on the walls, incorrectly alleging that it was March 20, rather than March 10. When Herman brought these issues to O'Mahoney's attention, O'Mahoney still refused to change the ineffective ratings he gave to Herman, despite being made aware that they were based upon false and/or incorrect information.   Similarly situated teachers who were under the age of forty (40) or who did not complain about discrimination, did not receive poor evaluations based upon false or incorrect information.

19. On or about May 2, 2014, Izzo again observed Herman during his first period. O'Mahoney and Izzo consistently and regularly evaluate teachers over the age of forty (40) during their first period. This is done because the whistle to call the students up from breakfast is often late, causing students to be late for the class period. Teachers are then held responsible and penalized for the student lateness in their evaluations. Teachers who were under the age of forty (40) and who did not complain of discrimination were not routinely observed during their first period class, were not penalized or held responsible for late students or even entirely absent classes. Many of these younger teachers were

4

actually granted observation "do-overs" in Ms. Izzo's words, in which they could be observed again and not have the first observation count. This benefit was not afforded to Herman or his similarly situated coworkers that were over the age of forty.

20.     Since O'Mahoney became Principal, O'Mahoney and Izzo have given younger teachers advanced notice prior to O'Mahoney and/or Izzo conducting an informal observation of them. Informal Observations are supposed to be unannounced visits. Older teachers, including Herman, were not similarly advised by O'Mahoney or Izzo in advance as to when they would be conducting informal observations of the older teacher's classrooms.

21.     Moreover, throughout the course of his employment at Sheepshead Bay as a principal, O'Mahoney has terminated older teachers, subjected older teachers to unfound discipline, baseless ratings, and harassment, and generally hassled older teachers into retirement, while consistently replacing them with younger teachers. Teachers that were the target of O'Mahoney's harassment and discriminatory animus are Keith Black, Ekaterina Reznikov, Mr. Cohen, Barry Martin, Alex Sinvinsky, John Cayton, Susan Crichlow, Mario Caggiano, Jay Appelblatt, Nataliya Shifrina, Kathleen Morgenlander, Shana Joseph, and Lois Rosenblatt.

22.     While Herman had a stellar record of performance prior to O'Mahoney's arrival, after O'Mahoney became principal, he began to issue negative observations and evaluations for Herman's performance, while not similarly treating Herman's younger co-workers, or those who did not complain of discrimination.

23.     On or about May 13, 2014, Herman was observed by Izzo. Izzo came five minutes late and failed to observe Herman instructing the children in their "Do Now" for the day, a key

component to the class for evaluation purposes. Izzo later misrepresented Herman's "Do Now" from his lesson plan to have comprised the entirety of his lesson for the day, based upon which she rated him overall ineffective for the student assessment category. Izzo also missed the vocabulary review portion of the class and yet gave him poor reviews for that portion of the evaluation as well.

24.     On or about May 21, 2014, Herman applied for a posted vacancy in integrated co-teaching ("ICT"), a class taught by both a regular education math teacher and a special education teacher. Herman was informed that he was granted the position and on or about June 24, 2014, he was given his program for the upcoming school year, indicating the new position.

25.     At the start of the 2014-2015 school year, it was revealed through a list of teachers on an email sent by O'Mahoney that only older and more senior teachers received Teacher Improvement Plans ("TIP"). No younger teachers or new teachers were on the list which means that no young teacher received an ineffective or developing rating. Herman was on the list as he was incorrectly given a developing rating for the 2013-2014 school year.

26.     On or about September 2, 2014, Herman discovered that his program had changed and that Dr. Clark was now tasked to do ICT. Herman confronted Izzo about the change and she told him she would talk to O'Mahoney. O'Mahoney would not give Herman his position back, despite the fact that a teacher's program cannot be changed when that teacher was awarded a posted position as per the collective bargaining agreement. Herman filed a grievance against O'Mahoney and subsequently won that grievance allowing him to proceed with the ICT position.

27.    On or about September 12, 2014, Herman applied for the position of cafeteria supervisor. Under the union rules, the most senior teachers should be given preference for the position. Additionally, the posted position was meant for one teacher. However, O'Mahoney broke up the position into two positions, giving Herman period five and giving another teacher with less seniority period six. Herman filed a grievance on October 10, 2014 and won. Despite O'Mahoney's efforts, Herman now is the cafeteria supervisor for periods five and six.

28.    On or about September 15, 2014, Herman met with O'Mahoney to discuss his TIP. During this meeting, O'Mahoney told Herman that he is a bad teacher and that his Regents scores were terrible in algebra. Herman reminded O'Mahoney that his scores were in fact great. O'Mahoney looked up Herman's scores and appeared upset when he realized that he was misinformed and misguided with regard to Herman's performance.

29.    On or about October 7, 2014, O'Mahoney and Izzo came into Herman's second period class and began to look through his papers on his podium without permission. Izzo then asked Herman to meet with her and O'Mahoney in the principal's office during seventh period. During this meeting, O'Mahoney yelled at Herman and kept referring to "learning targets," a concept that he discussed in an email he had sent out after he and Izzo had observed Herman. O'Mahoney continued to yell at Herman stating that he had failed to incorporate this method in his lesson. Given that Herman received the email on "learning targets" after he was observed, this was another effort by O'Mahoney to harass, retaliate, and set Herman up to fail.

30.  On or about October 14, 2014, O'Mahoney came to Herman's second period class with Izzo and checked a student's work. Later that day, O'Mahoney asked to meet with Herman. During this meeting, O'Mahoney ridiculed Herman and told him that he is not a good teacher. He also criticized Herman for one of his student's failure to respond to O'Mahoney's questions during the lesson, despite the fact that the student does not speak English.

31.  On or about October 28, 2014, Herman had a formal evaluation conducted by Izzo. During his post observation meeting with Izzo on or about November 6, 2014, Izzo told him that his lesson was good. She then said that O'Mahoney would have to review his rating as he would make the final decision on the rating and make any changes necessary, despite the fact that O'Mahoney did not observe Herman during this lesson. Herman received and signed his observation report on or about November 10, 2014, which indicated that it had last been revised on that same day. Upon information and belief, O'Mahoney changed Herman's ratings, giving him two ineffective ratings and two developing ratings. Upon information and belief, Izzo told two other older teachers, Kathy Morganlander and Keith Black, that O'Mahoney would make the final decision on their evaluation reports, regardless of his presence at the observation.

32.  In or around November 2014, O'Mahoney stated during a staff meeting, "these are the fuck you years for senior teachers. This is the fuck you money." O'Mahoney continued to make these comments in subsequent meetings. On one occasion, Herman asked O'Mahoney what he meant by his comments. O'Mahoney responded and stated, "it's almost impossible to

get rid of any senior teacher, the union won't allow that, and to get rid of a senior teacher will take years."

33.     In or around the beginning of March 2015, O'Mahoney informed Herman that he would be teaching an additional geometry class during first period, while he already had a class that period. This required Herman to teach two different types of geometry during the same class period. Moreover, this additional class resulted in Herman having four math classes, teaching four different math subjects, which is against the collective bargaining agreement. Izzo informed Herman that he would start teaching the additional geometry class on March 15, 2015 and that the additional class would only be for one week. However, Herman is now required to continue teaching this class until the end of the school year.

34.     On or about March 24, 2015, Herman had a post observation meeting with Izzo. Izzo had rated Herman effective in every category and the meeting was positive up until O'Mahoney walked in. Izzo stated that Herman's use of assessment in instruction was effective and O'Mahoney gave her a glaring look which prompted Izzo to change her mind and give Herman a developing rating for that category.

35.     As a result of the above discrimination, Herman has suffered both financial and emotional damages.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER FEDERAL LAW

36. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint. The Age Discrimination in Employment Act of 1967 provides that

a. It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

37. As described above, the DOE has taken adverse employment actions against Plaintiff, including subjecting him to a hostile work environment, maintaining an atmosphere of adverse actions, making comments regarding his age, and mischaracterizing his performance, which were motivated, in part, upon Plaintiff's age, in violation of the Age Discrimination in Employment Act of 1967.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER FEDERAL LAW

38. Plaintiff repeats, reiterates, and realleges each and every allegation in the above paragraphs of this complaint. The Age Discrimination in Employment Act provides that

a. It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

39. As described above, the DOE continues to retaliate against Plaintiff, for opposing discriminatory practices in violation of the Age Discrimination in Employment Act of 1967.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

40. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

41. The Administrative Code of City of NY § 8-107 [1] provides that

    a. It shall be an unlawful discriminatory practice: (1) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

42. As described above, Defendant has taken adverse employment actions against Plaintiff, including subjecting him to a hostile work environment, maintaining an atmosphere of adverse actions, making comments regarding his age, and mischaracterizing his performance, which were motivated, in part, upon Plaintiff's age in violation of New York City Administrative Code Title 8.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

43. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

44. New York City Administrative Code Title 8-107(13) provides for employer liability for discriminatory conduct by employee, agent or independent contractor:

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

11

b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

c.  the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

45. As described above, the Defendant's actions are in violation of the New York City Administrative Code Title 8-107(13).

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

46. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

47. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer to discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

48. As detailed above, the Defendant has violated New York City Administrative Code Title 8.

### AS A SIXTH CAUSE OF ACTION AGAINST THE INDIVIDUAL DEFENDANTS FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

49. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

50. Under New York City Administrative Code Title 8-107(6), "it shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of

any of the acts forbidden under this chapter, or to attempt to do so."

51. As detailed above, O'Mahoney and Izzo aided and abetted the acts of discrimination and

harassment alleged above by participating in the discrimination and harassment Plaintiff

was subjected to, in violation of the New York City Administrative Code Title 8-107.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

52.  Plaintiff repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this complaint. New York State Human Rights Law provides that

a. It shall be an unlawful discriminatory practice: (1) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

53. As described above, the Defendant's actions are in violation of the New York State Human

Rights Law.

## AS A EIGHTH CAUSE OF ACTION FOR DISCRIMINATION
## FOR THE NEW YORK STATE HUMAN RIGHTS LAW

54. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this complaint.

55. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory

practice: "For any person engaged in any activity to which this section applies to retaliate

13

or discriminate against any person because [s]he has opposed any practices forbidden under this article."

56. As detailed above, the Defendant is continuing to retaliate against Plaintiff in violation of the New York State Executive Law § 296.

### AS A NINETH CAUSE OF ACTION AGAINST THE INDIVIDUAL DEFENDANTS FOR DISCRIMINATION UNDER STATE LAW

57. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint. New York State Executive Law §296(6) provides that it "shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

58. As detailed above, O'Mahoney and Izzo aided and abetted the acts of discrimination and harassment alleged above by participating in the discrimination and harassment Plaintiff was subjected to, in violation of the New York State Executive Law § 296.

14

WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other damages permitted by law.   It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Long Island City, New York
       May 19, 2015

WHITE, RICOTTA & MARKS, P.C.
*Attorneys for Plaintiff*
3110 37th Avenue, Suite 401
Long Island City, New York 11101
(347) 464-8694

MATTHEW MARKS (MM-5848)

15