UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

HERMAN LEBOWITZ, EKATERINA
REZNIKOV, and KEITH BLACK,

                              Plaintiffs,

           v.

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, JOHN O'MAHONEY, and
LAURA IZZO (individually and in their official
capacities),

                              Defendants.

---

**MEMORANDUM AND ORDER**
15-CV-2890 (LDH) (ST)
15-CV-5548 (LDH) (ST)

LaSHANN DeARCY HALL, United States District Judge:

Plaintiffs Herman Lebowitz, Ekaterina Reznikov, and Keith Black bring the instant

actions against the New York City Department of Education ("NYC DOE"), John O'Mahoney,

and Laura Izzo, asserting claims for discrimination and hostile work environment pursuant to the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*., New York State

Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").[1]

---

[1] On March 31, 2017, the Court dismissed the following claims: Lebowitz's ADEA and NYSHRL age discrimination claims; Reznikov's disability discrimination claims under the Americans with Disabilities Act ("ADA"), NYSHRL, and NYCHRL; Reznikov's national origin discrimination claims under Title VII of the Civil Rights Act of 1984 ("Title VII"), NYSHRL, and NYCHRL; Plaintiffs' retaliation claims under the ADEA, NYSHRL, and NYCHRL; Black's retaliation claim under the Family Medical Leave Act ("FMLA"); Black and Lebowitz's hostile work environment claims under the ADEA and NYSHRL; and Plaintiffs' intentional infliction of emotional distress claims. (ECF No. 56.) On August 10, 2018, the parties stipulated to the dismissal of Reznikov's ADEA discrimination claim based on adverse action. (ECF No. 95.) On January 31, 2019, the Court granted Plaintiffs leave to amend their complaint to assert Lebowitz's ADEA age discrimination claim based on new adverse action taken against him. (Jan. 30, 2019 Order.)

Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all claims.

## BACKGROUND[2]

### I.      The NYC DOE, O'Mahoney, and Izzo

Plaintiffs are teachers at Sheepshead Bay High School ("Sheepshead Bay"), a New York City public school operated by the NYC DOE.  (*See generally* Defs.' Reply Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Defs.' Reply 56.1"), ECF No. 105-10.)  Defendants O'Mahoney and Izzo joined Sheepshead Bay in 2012, assuming the role of principal and vice principal, respectively.  (*Id.* ¶ 22.)  That same year, Sheepshead Bay was designated as a failing school by the state.  (*Id.* ¶ 9.)  As a result of that designation, all staff were required to reapply to their positions for the next school year.  (*Id.* ¶ 112.)  As principal, O'Mahoney, along with Sheepshead Bay's leadership team, had to "right size" the school's budget.  (*Id.* ¶ 10.)  As part of that effort, 20 teachers were "excessed" during the 2012–2013 school year.  (*Id.* ¶ 118.)  A teacher may be excessed from the school where he or she is currently assigned when the number of teachers in a certain license area exceeds the allocated positions.  (*Id.* ¶ 12.)  The teacher with the least seniority may be removed, but the NYC DOE is obligated to place that teacher on another assignment in the school system.  (*Id.*)  Pursuant to state law, teachers with the least seniority were excessed first.  (*Id.* ¶ 14.)

Plaintiffs maintain, and Defendants dispute, that upon O'Mahoney and Izzo's arrival at Sheepshead Bay, O'Mahoney and Izzo engaged in a pattern of conduct to discriminate against

---

[2] The following facts are undisputed unless otherwise noted and are taken from the parties' statements of material facts pursuant to Local Civ. R. 56.1 and the record of admissible evidence.  Facts that are not contradicted by citations to admissible evidence are deemed admitted.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

and "rid" the school of the older teachers.  According to Plaintiffs, both O'Mahoney and Izzo made derogatory statements regarding older teachers.  (*See, e.g.*, *id.* ¶¶ 23, 107.)  For example, Plaintiffs assert that:  (1) O'Mahoney stated during a January 2012 staff meeting that some teachers are receiving more money because they were older and not because they were contributing more to the school; and (2) O'Mahoney and Izzo promised the younger teachers that they were going to get rid of the older teachers so that the younger teachers would not be excessed and have to start their tenure process all over again.  (*Id.* ¶¶ 108, 124.)  Defendants dispute many of the statements attributed to them by Plaintiffs.  (*See, e.g.*, *id.* ¶ 107.)  However, Defendants do not dispute that O'Mahoney stated "it is impossible for a tenured teacher to be let go or terminated because the 3020-a process is so rigorous that it's a 50/50 chance event at the end, even if all the documentation is there."  (*Id.* ¶ 120.)  Further, on at least one occasion, Izzo heard O'Mahoney refer to teachers as being in their "fuck you years."  (*Id.* ¶ 110.)

During the 2013–2014 school year, the NYC DOE instituted a state-mandated teacher evaluation system called "Advance."  (*Id.* ¶ 25.)  Under Advance, the administrator conducting a teacher observation scored the teacher using a four-level rating scale known as a HEDI rating ("highly effective," "effective," "developing," and "ineffective").  (*Id.* ¶ 30.)  During the 2013–2014 school year, of the 60 teachers eligible for a HEDI rating, 44 received ratings of "effective"—21 of those 44 teachers were over the age of 40.  (*Id.* ¶ 98.)  During the 2014–2015 school year, of the 36 teachers eligible for a HEDI rating, 29 received ratings of "effective,"—17 of those 29 teachers were over the age of 40.  (*Id.* ¶ 99.)  And, during the 2015–2016 school year, of the 24 teachers eligible for a HEDI rating, 21 received ratings of "effective,"—16 of those 21 teachers were over the age of 40.  (*Id.* ¶ 100.)  Plaintiffs maintain that during the 2013–2014 school year, 16 teachers received a rating of either "developing" or "ineffective," and of those 16

teachers, 15 were over the age of 40; during the 2014–2015 school year, 10 teachers were placed on Teacher Improvement Plan ("TIP")[3] and each teacher was an "older, senior teacher;" that during the 2014–2015 school year, 6 teachers received "developing" ratings and all 6 were over the age of 40; during the 2015–2016 school year, 3 teachers were placed on a TIP and all of those teachers were over the age of 40; and that during the 2015–2016 school year, 2 teachers received "developing" ratings and both were over the age of 40.  (*Id*. ¶¶ 221–226.)

## II.    Lebowitz

Lebowitz is 58 years-old[4] and was first hired by the NYC DOE in 1990.  (*Id*. ¶ 20.) Lebowitz began teaching at Sheepshead Bay in 2000.  (*Id*. ¶ 21.)  Lebowitz was observed formally and informally under Advance at least thirteen times during the 2013–2014, 2014–2015, and 2015–2016 school years.  (*Id*. ¶ 33.)  In particular, Izzo observed Lebowitz seven times over the 2013–2014 and 2014–2015 school years, and O'Mahoney observed him four times over the 2013–2014, 2014–2015, and 2015–2016 school years.  (*Id*. ¶¶ 37, 41.)

Lebowitz received "effective" ratings on certain objective criteria and did "relatively well" on at least some of his reports.  (*See id.* ¶ 136.)  However, on his 2013–2014 and 2014–2015 Annual Professional Performance Reviews ("APPR"), Lebowitz received a score of 67 out of 100, resulting in a "developing" rating for both school years.  (*Id*. ¶¶ 42, 47.)  Consequently, Lebowitz was twice placed on a TIP and was required to attend professional development meetings.  (*Id*. ¶¶ 43, 45, 48.)  Despite Lebowitz's placements on a TIP, his 2015–2016 APPR score rose to only 73 out of 100, earning him a "developing" rating for a third year.  (*Id*. ¶ 49.) Lebowitz maintains that after observing and rating him on April 27, 2015, Izzo told him that she

---

[3] TIPs are for teachers who had an annual rating of either "developing" or "ineffective" the prior school year and are designed to improve their teaching practices.  (Defs.' Reply 56.1 ¶ 44.)
[4] The Court takes this fact from the fourth amended complaint.  (Fourth. Am. Compl. ¶ 12, ECF No. 94-1.)

needed to give him a low score to make sure that his year-end rating was sufficiently low. (Defs.' Reply 56.1 ¶ 131.)  According to Lebowitz, Izzo told him that she needed to give him a low score because she needed to bring down his overall APPR because she gave him too high of a rating on his two previous observation reports for the year.  (*Id.* ¶ 132.)

Subsequently, on June 21, 2016, the NYC DOE brought charges against Lebowitz seeking his termination under section 3020-a of the New York State Education Law.[5]  (*Id.* ¶ 52.) In the 3020-a charges, the NYC DOE specified that Lebowitz:  "failed to properly, adequately, and/or effectively plan and/or execute separate lessons" observed on eight different occasions during the 2013–2014, 2014–2015, and 2015–2016 school years; "used poor judgment and/or neglected his duties, and/or acted unprofessionally, and/or failed to follow school policy and procedure" in or about May 2015; and "failed to effectively implement supervisory directives, recommendations, counsel, instruction, and professional development" during the 2013–2014, 2014–2015, and 2015–2016 school years.  (*Id.* ¶ 54.)  Ultimately, a hearing examiner sustained thirteen of the specifications and determined that those charges constituted "just cause" for

---

[5] Pursuant to section 3020-a of the New York State Education Law, Susan Sangillo Bellifemine was appointed to hear and decide whether there was just cause for disciplinary action against Lebowitz for his failures in the nature of incompetent and inefficient services, neglect of duty, failure to follow procedures, and failure to carry out normal duties during the 2013–2014, 2014–2015, and 2015–2016 school years.  (*Id.* ¶ 53.)

Lebowitz's termination.[6]  (*Id*. ¶ 57.)  The hearing examiner dismissed the remaining

specifications.[7]  (*Id.* ¶ 58.)

On June 30, 2014, Lebowitz filed a verified complaint with the New York State Division

of Human Rights (the "NYSDHR") alleging that the NYC DOE instituted an unlawful

discriminatory practice based on age.  (*See id*. ¶ 1.)

## III.   Reznikov

Reznikov is 56 years-old and was hired by the NYC DOE as a math teacher at

Sheepshead Bay in or around 1999.[8]  During the 2013–2014 school year, Izzo and O'Mahoney

informally observed and evaluated Reznikov on November 4, 2013; December 9, 2013; February

26, 2014; May 1, 2014; May 16, 2014; and May 27, 2014.  (*Id*. ¶¶ 61, 63.)  On June 25, 2014,

Reznikov received an APPR score of 63 out of 100 for the 2013–2014 school year and an overall

rating of "ineffective."  (*Id.* ¶ 64.)

Following the 2013–2014 school year, Reznikov was notified that she was being placed

in the Absent Teacher Reserve ("ATR") because Sheepshead Bay was set to close, and she did

not have the requisite seniority to remain.  (*Id*. ¶ 66.)  Prior to her departure from Sheepshead

Bay, Reznikov was subject to at least one disciplinary action based on the amount of time she

took during one of her lunch breaks.  (*Id.* ¶ 161.)  On November 10, 2014, Reznikov filed a

charge of discrimination with the EEOC alleging age discrimination, retaliation, and a pattern

---

[6] The specifications sustained were specifications 1a., 1c., in part, 1e., 1h., 1j., 3a., 3b., 3c., 3g., 3i., 3j., 3k., and 3i. (Defs.' Reply 56.1 ¶ 58.)
[7] The specifications dismissed were specifications 1b., 1c., in part, 1d., 1f., 1g., 1i., 1k., 1l., 3d., 3e., 3h., and 3m. (*Id.* ¶ 58.)
[8] The Court takes these facts from the fourth amended complaint.  (Fourth Am. Compl. ¶¶ 57–58.)

and practice of prejudice and animosity toward teachers over the age of 40 at Sheepshead Bay. (*See id*. ¶ 3.)

During the 2014–2015 school year, Reznikov was assigned to teach math at Franklin Delano Roosevelt High School ("Roosevelt").  (*Id*. ¶ 67.)  She received a pay increase.  (*Id*. ¶ 70.)  While at Roosevelt, Reznikov received an APPR rating of 93 out of 100 and an overall rating of "highly effective."  (*Id.* ¶ 174.)  Reznikov remained in the ATR pool for the first part of the 2015–2016 school year but worked at the student suspension center for the remainder of that year.  (*Id*. ¶ 68.)  As of April 26, 2017, Reznikov has taught math at James Madison High School.  (*Id*. ¶ 69.)

## IV.    Black

Black is 47 years-old[9] and was hired by the NYC DOE to teach at Sheepshead Bay in 1999.  (*Id*. ¶ 72.)  He received "satisfactory" ratings from 1999–2010.  (*Id.* ¶ 181.)  Izzo observed Black informally on October 22, 2013, and December 9, 2013.  (*Id.* ¶ 74.)  On March 14, 2014, O'Mahoney observed Black and rated him on 10 out of 22 Advance components.  (*Id.* ¶ 194.)  For each component, Black received an "ineffective" rating.  (*Id*.)  On May 13, 2014, Izzo formally observed and evaluated Black.  (*Id*. ¶ 76.)  Following the 2013–2014 school year, Black received an APPR score of 69 out of 100, resulting in a "developing" rating.  (*Id*. ¶ 77.)

Izzo again observed and evaluated Black on October 24, 2014, and December 16, 2014.  (*Id*. ¶ 84.)  Prior to the 2015–2016 school year, Black was notified that he was excessed.  (*Id*. ¶ 85.)  Excessed teachers get placed in the ATR pool.  (*Id*. ¶ 83.)  On December 2, 2014, Black filed a discrimination charge with the EEOC alleging a pattern of discrimination, harassment, and retaliation against him due to his age and disability.  (*Id*. ¶ 5.)  As of April 17, 2017, Black

---

[9] The Court takes this fact from the fourth amended complaint.  (Fourth Am. Compl. ¶ 103.)

remained in the ATR pool and was reporting to work at the Young Women's Leadership Academy.  (*Id.* ¶ 88.)  Black took several unpaid FMLA medical leaves of absence in March 2013; April 2013; February 2015; and March 2015.  (*Id*. ¶ 220.)

\* \* \*

Lebowitz commenced the instant action on May 19, 2015.  (*Id*. ¶ 2.)  Reznikov and Black commenced the instant action on September 24, 2015.  (*Id*. ¶¶ 4, 6.)  On October 16, 2015, Lebowitz moved to consolidate the actions.  (15-cv-2890, ECF No. 15.)  The Honorable William Kuntz granted the motion on October 19, 2015.

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the [movants are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  Where the non-movants bear the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movants' claim.  *Celotex Corp.*, 477 U.S. at 325.  Once the movants meet their initial burden, the non-movants may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).  The Court is to believe the evidence of the non-movants and draw all justifiable inferences in their favor, *Anderson*, 477 U.S. at 255, but the non-movants must still do more than merely assert conclusions that are unsupported by

arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

### I.    The ADEA

#### A.    Individual Liability

Defendants urge the Court to dismiss Plaintiffs' ADEA claims against O'Mahoney and Izzo, arguing that the ADEA precludes individual liability.  (Mem. Law Supp. Defs.' Mot. Summ. J. ("Defs.' Mem.") 4, ECF No. 103-20.)  Plaintiffs neglect to counter Defendants' argument, and properly so.  It is well-settled that the ADEA precludes individual liability.  *See Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) (affirming dismissal of former union worker's ADEA claims against three individual trustees of union's pension plan because they were individuals).  Accordingly, Plaintiffs' ADEA claims against O'Mahoney and Izzo are dismissed.

#### B.    Timeliness of ADEA Claims

"A plaintiff seeking to recover under the ADEA must file a discrimination charge with [the relevant] agency within 300 days of the occurrence of the allegedly unlawful employment practice."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  Absent an applicable exception, the failure to satisfy this requirement will result in the dismissal of any claim brought under the ADEA for discrimination as time-barred.  *See id.* at 238 (affirming dismissal of causes of action rendered untimely by the 300-day statute of limitations).

Lebowitz filed a verified complaint with the NYSDHR on June 30, 2014, and Black filed a charge of discrimination with the EEOC on December 2, 2014.  (Defs.' Reply 56.1 ¶¶ 1, 5.) Defendants argue that Lebowitz and Black's ADEA claims predicated on conduct occurring

prior to September 3, 2013, and February 5, 2014, respectively, are time-barred.  (Defs.' Mem. 3)  Plaintiffs fail to respond to these arguments.  (*See generally* Pls.' Opp'n Defs.' Mot. Summ. J. ("Pls.' Opp'n"), ECF No. 104-57.)  As such, the Court deems Plaintiffs' argument on this issue abandoned.  *See Williams v. Suffolk Cty.*, 284 F. Supp. 3d 275, 284 (E.D.N.Y. 2018) (collecting cases and granting defendants summary judgement on a claim where plaintiff failed to respond to defendants' arguments for dismissal).  Accordingly, to the extent that Lebowitz and Black's ADEA claims are predicated on conduct occurring prior to September 3, 2013, and February 5, 2014, respectively, they are dismissed.

With respect to Reznikov, Plaintiffs do not seem to challenge Defendants' argument that any ADEA discrimination claim based on conduct that occurred prior to January 14, 2014, is time-barred.  (*See generally* Pls.' Opp'n.)  Indeed, Plaintiffs correctly point out that "claims based on events occurring from January 14, 2014, on are not barred by the statute of limitations." (*Id*. 12.)  This formulation rightly suggests that conduct predating January 14, 2014, is barred.  That said, as Plaintiffs note, the limitations period operates differently with respect to a hostile work environment claim.  (*Id.*)  "Hostile environment claims," . . . "are different in kind from discrete acts," as "[t]heir very nature involves repeated conduct."  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).  Thus, "[a] charge alleging a hostile work environment claim . . . will

not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.*

### C.  Age Discrimination

The ADEA was enacted to protect employees from discrimination on account of age.  It provides, in relevant part, that:

> It shall be unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a).

In assessing discrimination claims brought under the ADEA, courts are required to employ the same burden-shifting framework that is prescribed for Title VII claims.  *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).  At the first step in this framework, a plaintiff must establish a prima facie case of age discrimination.  *Id.*  To do so, a plaintiff must provide evidence that:  (1) he or she was within the protected age group; (2) he or she was qualified for the position; (3) he or she experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination.  *Id.*  Defendants argue that Plaintiffs fail to make this requisite showing.[10]  (Defs.' Mem. 8–20.)

With respect to Reznikov and Black, Defendants maintain that both fail to demonstrate that they suffered an adverse employment action cognizable under law.  (*Id.*)  Curiously, in their

---

[10] Although not argued by Defendants, the Court notes that Plaintiffs failed to adduce evidence that they are within the protected age group.  (*See generally* Pls.' Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Pls.' 56.1"), ECF No. 104-56.)  On this basis, they have not established a prima facie case.  Nonetheless, the Court reluctantly continues its analysis.

opposition papers, Plaintiffs fail altogether to address Defendants' argument on this point. Instead, Plaintiffs are silent as to Black's ADEA discrimination claim, and as to Reznikov, devote the entirety of their submission to arguments related exclusively to her ADEA hostile work environment claim.  (*See generally* Pls.' Opp'n 19–21.)  In other words, Reznikov and Black have each abandoned their ADEA discrimination claims, and these claims are ripe for dismissal.  *See Williams*, 284 F. Supp. 3d at 284 (collecting cases and granting defendants summary judgement on a claim where plaintiff failed to respond to defendants' arguments for dismissal).

Even if Reznikov and Black had not abandoned these claims, they would be dismissed. Under law, not all adverse actions taken against an employee are actionable.  Instead, the law requires that an adverse action be materially adverse.  *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) ("An adverse employment action is a materially adverse change in the terms and conditions of employment.")  "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  Neither Reznikov nor Black have adduced evidence of any action that may be deemed materially adverse as a matter of law.

As Defendants correctly point out, Reznikov and Black's ADEA discrimination claims were limited by order of this Court to "Reznikov's placement on ATR and Black's being 'excessed' from [Sheepshead Bay.]"  *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d

158, 172 (E.D.N.Y. 2017).  That said, placement on ATR is not, in the absence of resulting

negative consequences, an adverse employment action.  *See Harris v. Bd. of Educ. of the City*

*Sch. Dist. of the City of New York*, 230 F. Supp. 3d 88, 106 (E.D.N.Y. 2017) (examining whether

plaintiff experienced a change in salary or benefits in addition to being placed on ATR).  Absent

from the record is any evidence that Reznikov's placement on ATR resulted in negative

consequences.  In fact, Reznikov received a salary increase upon her placement at Roosevelt.

(Defs.' Reply 56.1 ¶ 70.)  And, there is no evidence that her hours, benefits, or other

responsibilities were in any way diminished by her ATR placement.  In other words, her

placement on ATR was not occasioned by an adverse employment action.  *See Harris*, 230 F.

Supp. 3d at 106 ("If an employee earns the same salary, has the same benefits, works the same

hours . . . and has the same opportunities for promotion following a transfer then there is no

adverse employment action, even if the employee is extremely unhappy about it.").

Black's claim concerning being excessed from Sheepshead Bay suffers from the same

fatality.  "[A] teacher who is 'excessed' is not fired, but rather, is reassigned to another position

in the school system and has not suffered an adverse employment action" when the salary

remains unchanged.  *Id.* at 106 (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636,

639 (2d Cir. 2000)); *see also Jeter v. Bd. of Educ. of NY*, 99-CV-2537,  2004 WL 5584463, at *8

(E.D.N.Y. Mar. 30, 2004) (holding that plaintiff who was excessed did not suffer an adverse

employment action because the excess did not change plaintiff's "salary, benefits, hours or

opportunities for promotion").  Neither Reznikov nor Black have adduced evidence of an adverse

employment.  Accordingly, they fail to make a prima facie case of age discrimination under the ADEA, and their claims are both dismissed.

With respect to Lebowitz, Defendants do not dispute that the filing of section 3020-a charges against him constitutes an adverse employment action.  Defendants urge the Court to dismiss his claim because he has failed to demonstrate that the 3020-a charges were brought under circumstances giving rise to an inference of discrimination.  (*See* Defs.' Mem. 24–33.) The Court agrees.

In the 3020-a charges, the NYC DOE specified that Lebowitz:  "failed to properly, adequately, and/or effectively plan and/or execute separate lessons" observed on eight different occasions during the 2013–2014, 2014–2015, and 2015–2016 school years; "used poor judgment and/or neglected his duties, and/or acted unprofessionally, and/or failed to follow school policy and procedure" in or about May 2015; and "failed to effectively implement supervisory directives, recommendations, counsel, instruction, and professional development" during the 2013–2014, 2014–2015, and 2015–2016 school years.  (Defs.' Reply 56.1 ¶ 54.)

Lebowitz argues that "he was targeted by Defendants and given false and unsupported negative observation reports because of his age."  (Pls.' Opp'n 33)  However, an independent hearing examiner found sufficient support for most of the charges lodged against Lebowitz, including that he failed to:  (1) properly, adequately, and/or effectively plan and/or execute separate lesson plans as observed on or about October 23, 2013, May 2, 2014, October 28, 2014, April 27, 2015, and November 24, 2015; (2) effectively implement supervisory directives, recommendations, counsel, instruction, and professional development regarding the elements of effective lesson planning and/or designing coherent instructions; (3) engage in effective lesson execution and demonstrate knowledge of students; (4) effectively manage the classroom or

14

student behavior; (5) create a classroom environment of respect and rapport using appropriate questioning and discussion techniques; (6) engage students in learning; and (7) use assessment in instruction.  (Defs.' Reply 56.1 ¶ 57.)

While Lebowitz argues that these charges resulted from a purported scheme by O'Mahoney and Izzo to rid Sheepshead Bay of older teachers, the record indicates that O'Mahoney and Izzo were not the only individuals who observed and reviewed Lebowitz throughout this time.  (*See* June 11, 2018 Decl. Eric Murrell, Ex. J. at 4, n.2, ECF No. 103-11.) Indeed, Lebowitz was observed at least thirteen times during the 2013–2014, 2014–2015, and 2015–2016 school years, with Izzo observing him seven times and O'Mahoney observed him four times.  (Defs.' Reply 56.1 ¶¶ 33, 37, 41.)  Lebowitz has adduced no evidence that the sustained charges resulted from any of the observations performed by Izzo and O'Mahoney versus some other observer.  And, apart from Lebowitz's unsupported assertion, there is no evidence to support the claim that he received satisfactory ratings every year prior to O'Mahoney and Izzo's tenure.

Nonetheless, in an effort to persuade the Court that the charges brought against him and his resulting termination were motivated by discrimination, Lebowitz directs the Court to statements made by O'Mahoney and Izzo, which Lebowitz maintains were offensive to older teachers.  (Pls.' Opp'n 33–34.)  Specifically, O'Mahoney stated at least once that "it is impossible for a tenured teacher to be let go or terminated because the [removal] process is so rigorous that it's a 50/50 chance event at the end, even if all the documentation is there" and at least once referred to older teachers as being in their "fuck you years."  (Defs.' Reply 56.1 ¶¶ 110, 120.)  Lebowitz also asserts that in 2012, O'Mahoney stated some teachers are receiving more money because they were older, and not because they were contributing more to the

school.  (Pls.' Opp'n 19.)  And, according to Lebowitz, both O'Mahoney and Izzo promised younger teachers that they were going to get rid of the older teachers so that the younger teachers would not be excessed.  (*Id.* 21.)

As a threshold matter, "stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."  *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).  Moreover, there is no evidence that any of these comments were made close in time to the filing of the June 21, 2016 3020(a) charges against Lebowitz to allow an inference that they bore relation to some discriminatory animus. *See Aiossa v. Bank of Am., N.A.*, 10-CV-1275 (JS) (ETB), 2012 WL 4344183, at *2 (E.D.N.Y. Sept. 21, 2012) (finding 2005 statement and 2006 hiring decision "too far removed in time to raise an inference of discrimination surrounding" 2007 transfer and 2008 termination), *aff'd*, 538 F. App'x 8 (2d Cir. 2013); *Smith v. Revival Home Health Care, Inc.*, 97-CV-4415, 2000 WL 335747, at *4 (E.D.N.Y. Mar. 28, 2000) ("Statements made long before and not in the context of the adverse action cannot support a claim of discriminatory motive for that action.").[11]

Next, Lebowitz makes much of purported statistical evidence that during the 2013–2014, 2014–2015, and 2015–2016 school years, "not one teacher under the age of 39 received a negative year-end rating," and that during the 2014–2015 and 2015–2016 school years, "every teacher placed [on a TIP] was over the age of 40."  (Pls.' Opp'n 30.)  In support of these contentions, Lebowitz directs the Court to paragraphs 221–226 of Plaintiffs' 56.1 counterstatement.  (*Id.*)  The evidence cited in those paragraphs does not support Lebowitz's

---

[11] Lebowitz also maintains that Izzo informed him that she needed to give him a low score on his April 27, 2015 observation report to bring down his overall APPR because she had given him too high of a rating on his two previous observation reports for the year.  (Defs.' Reply 56.1 ¶ 132.)  This fact is in dispute.  Even if true, this fact does not give rise to an inference of discrimination based on age, as there is no fact that might allow for the inference that Izzo's conduct was in any way motivated by Lebowitz's age.

argument.[12]  And even if it did, this statistical evidence is nonetheless inadmissible because it is

not supported by expert analysis.  *See Sacks v. Gandhi Eng'g, Inc*., 999 F. Supp. 2d 629, 646

(S.D.N.Y. 2014) (rejecting the contention that "87.5% of all employees terminated . . . were over

the age of 40" as it failed to meet minimal standards of admissibility because it was not

supported by expert analysis); *Saenger v. Montefiore Med. Ctr.*, 706 F.Supp.2d 494, 515–16

(S.D.N.Y. 2010) (commenting that statistical evidence must be supported by expert

analysis because otherwise "courts would have a difficult time ensuring that juries consider only

'statistically significant data'" (citing *Ottaviani v. SUNY New Paltz*, 875 F.2d 365, 371 (2d Cir.

1989)); *LaMarch v. Tishman Speyer Props., L.P.*, 03-CV-5246, 2006 WL 2265086, at *6

(E.D.N.Y. Aug. 8, 2006) ("[Plaintiff's] statistical evidence regarding the terminations of

employees older than 40 would be inadmissible because it is not supported by any expert

analysis . . . .").  In sum, Lebowitz has not carried his burden in establishing he suffered an

adverse employment action under circumstances giving rise to an inference of discrimination.

Accordingly, Lebowitz's claim is dismissed.

### D.  Hostile Work Environment

To establish a prima facie hostile work environment claim, a plaintiff must show that the

conduct was:  (1) objectively severe or pervasive, in that it creates an environment that a

reasonable person would find hostile or abusive; (2) subjectively severe or pervasive, in that she

must have perceived it as hostile or abusive; and (3) on account of her age.  *Davis-Garett v.*

*Urban Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019).  Put another way, "an actionable

---

[12] The cited evidence shows only that during the 2013–2014 school year, 16 teachers received a rating of either "developing" or "ineffective," and of those 16 teachers, 15 were over the age of 40; during the 2014–2015 school year, 10 teachers were placed on a TIP and each teacher was an "older, senior teacher;" during the 2014–2015 school year, 6 teachers received "developing" ratings and each teacher was over the age of 40; during the 2015–2016 school year, 3 teachers were placed on a TIP and each teacher was over the age of 40; and that during the 2015–2016 school year, 2 teachers received "developing" ratings and both were over the age of 40.  (Defs.' Reply 56.1 ¶¶ 221–226.)

discrimination claim based on hostile work environment under the ADEA is one for which the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment . . . ." *Kassner*, 496 F.3d at 240 (internal quotations omitted).

Here, only Reznikov asserts a hostile work environment claim. She premises her claim largely on comments purportedly made by O'Mahoney and Izzo. According to Reznikov, O'Mahoney referred to the older teachers as being in their "fuck you years" and earning their "fuck you money;" commented that he could have two younger teachers for the price of one older teacher; and told Reznikov "you've been in the system long enough and all you managed to do was get a high salary." (Pls.' Opp'n 19–20.) With respect to Izzo, Reznikov maintains that Izzo stated that she didn't need Reznikov's "stale methods" and directed Reznikov to learn from the younger teachers; referred to the older teachers as "oldies;" told Reznikov to think about retirement; and stated that "there's always a problem with you older teachers." (*Id.*) Defendants dispute that many of these statements were made. Even assuming that they were, they are insufficient to sustain Reznikov's claim.

No doubt, Reznikov subjectively believes that these comments were severe and/or pervasive. However, when viewed objectively, under the totality of the circumstances, these comments are insufficient evidence to overcome Defendants' motion. Among other things, none of the comments are threatening nor are they contended to have interfered with Reznikov's work performance. At bottom, these comments, while perhaps objectionable, amount to mere offensive utterances of the sort consistently rejected as sufficient to sustain a hostile work environment claim. *See, e.g.*, *Chizman v. Scarnati*, 218 F. Supp. 3d 175, 183 (E.D.N.Y. 2016) (deeming the comment that "it sucks getting old" relatively mild and deeming the comments

"what the fuck are you still doing here?" and "what do you expect, to die on the job?," uttered approximately five to ten times, offensive utterances rather than physically threatening or humiliating statements); *Sullivan v. NYC Dep't of Investigation*, 163 F. Supp. 3d 89, 102 (S.D.N.Y. 2016) (holding that colleague's reference to plaintiff as an "idol worshipper," statement that plaintiff's "age is showing," and statement that he "loved being in the company of old women" not sufficiently severe and pervasive).

It is also unclear exactly how many times these exchanges occurred.  Assuming that each exchange occurred once, when viewed over the course of the relevant three-year period, seven incidents cannot be deemed pervasive.  *See, e.g.*, *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) (five incidents of harassment over four years did not establish hostile work environment); *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 182 (E.D.N.Y. 2015) (finding five occasions over the course of roughly fourteen months too infrequent); *see also Williams v. Cnty. of Westchester*, 171 F.3d 98, 100–01 (2d Cir.1999) (holding that "evidence solely of sporadic" discrimination does not suffice).

In addition to the comments discussed above, Reznikov asserts that Izzo and O'Mahoney refused to allow her to speak at meetings; reprimanded her for missing a meeting; screamed at her that she was the worst teacher ever; and ostracized her.  (Pls.' Opp'n 19–20.)  These allegations are disputed, but in any event, amount to no more than minor annoyances.  *See Esar v. JP Morgan Chase Bank N.A.*, No. 15-CV-382 (NGG) (PK), 2018 WL 2075421, at *11 (E.D.N.Y. May 3, 2018) (finding evidence that plaintiff's manager scrutinized her attendance record; required her to clean the lobby; unpack branch supplies; work in the "detention room;" called her names; and refused to allow her to feed her parking meter insufficient to sustain hostile work environment claim); *see also Leon v. Dep't of Educ.*, 15 CV-7275 (KPF), 2017 WL

1157146, at *1–2 (S.D.N.Y. Mar. 27, 2017) (deeming allegations that school principal humiliated and disrespected teacher by yelling at him in front of his students and parents, directed him to perform unnecessary workplace tasks, and peering into his classroom window as nonactionable under the ADEA).  Even if these allegations are objectively pervasive, there is no evidence that O'Mahoney or Izzo based these actions on Reznikov's age.

Reznikov has simply failed to adduce evidence of objectively severe and pervasive conduct necessary to sustain a hostile work environment claim.   Accordingly, Reznikov's hostile work environment claim is dismissed.

*       *       *

Having dismissed all of the federal claims in this action, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's claims under NYSHRL and the NYCHRL.  *See Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)) ("We have said that if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"); *see also First Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district

court[.]").  These claims are therefore dismissed, without prejudice, for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Plaintiffs' ADEA discrimination claims and Reznikov's ADEA hostile work environment claim are each dismissed, with prejudice.

SO ORDERED:

 /s/ LDH
LASHANN DEARCY HALL
United States District Judge

Dated: Brooklyn, New York
       November 30, 2020